ALONSO SOBRINO HERMANOS & Co., peticionarios, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; R. BUSCAGLIA, TESORERO DE PUERTO RICO, interventor.

Núm. 81.—*Sometido:* Mayo 20, 1946. *Resuelto:* Enero 31, 1947.

*Dubón & Ochoteco* y *Otero Suro & Otero Suro,* abogados de la peticionaria; *Hon. Procurador General Interino Luis Negrón Fernández (E. Campos del Toro, ex Procurador General,* en el alegato)

y *J. B. Fernández Badillo,* abogado éste del Departamento de Justicia, abogados todos del interventor, querellado en el pleito principal.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

El presente es un recurso de *certiorari* interpuesto por la mercantil Alonso Sobrino Hermanos & Co. contra el Tribunal de Contribuciones para revisar la resolución que éste dictara con fecha 12 de diciembre de 1945 en caso de contribuciones sobre ingresos.

Antes de considerar y resolver las cuestiones planteadas en este litigio, es conveniente que hagamos una síntesis de los hechos del caso.

La peticionaria es una sociedad mercantil con oficinas principales en la ciudad de San Juan, Puerto Rico, donde se dedica a la compraventa de mercancía seca al por mayor. Allá para el año 1936 tenía varias sucursales en distintos pueblos de la isla que surtía única y exclusivamente con mercancía de sus almacenes principales en San Juan. Para poder controlar las operaciones de esas sucursales, la peticionaria le abría a cada una de ellas una cuenta corriente en los libros que llevaba en su oficina principal y en esa cuenta se les cargaba toda la mercancía que tomaban de los almacenes centrales. Dicha mercancía se les facturaba y cargaba a razón de 150 por ciento de su costo original puesta en los almacenes centrales de la peticionaria. El 50 por ciento de sobreprecio representaba, por una parte, un 20 por ciento del costo original para cubrir gastos de la sucursal y, por otra parte, un 30 por ciento del costo original como estimado beneficio. Las sucursales vendían la mercancía al público al 150 por ciento del costo original, o sea, al mismo precio que la peticionaria se las facturaba y cargaba. y remesaban a la oficina principal diaria o semanalmente el producto de las ventas realizadas para ser abonado a sus respectivas cuentas corrientes. Al final del año contributivo terminado

el 31 de diciembre de 1936 los inventarios de las sucursales arrojaron un balance de $100,756.33.

La peticionaria rindió dentro del término legal su declaración de ingresos correspondiente al año 1936. En enero 5 de 1944 el Tesorero de Puerto Rico le notificó una deficiencia montante a $3,368.14. Previa celebración de una vista administrativa, el Tesorero finalmente determinó la deficiencia en la suma de $3,380, y no conforme la peticionaria, radicó una querella ante el Tribunal de Contribuciones de Puerto Rico alegando, en resumen: (1) que el Tesorero se había negado erróneamente a deducir los sueldos pagados a sus socios gestores; y (2) que al reajustar los inventarios de las sucursales de la peticionaria para determinar el costo de la mercancía en poder de éstas al finalizar el año contributivo de 1936, el Tesorero utilizó erróneamente el coeficiente 30/130 de $100,756.33 (valor de la mercancía existente en dichas sucursales el 31 de diciembre de 1936, al precio que se la facturaba la principal) en vez de utilizar el coeficiente 50/150 sobre la referida suma que es el que determina el verdadero costo de dichas existencias.

Visto el caso, el Tribunal de Contribuciones dictó una resolución con fecha 31 de octubre de 1945 declarando sin lugar en todas sus partes la querella. Solicitada la reconsideración por la peticionaria, el Tribunal de Contribuciones reconsideró su anterior resolución dictando otra con fecha 12 de diciembre de 1945 concediendo a la peticionaria una deducción de los sueldos pagados por ésta a sus socios gestores José Español Lomba ($3,600) y Ramón Alonso Sobrino ($3,600) y la suma de $1,000 de los $4,800 reclamados en la planilla de contribuciones como sueldo del socio Manuel Alonso Sobrino. En cuanto al reajuste de los inventarios de las existencias de las sucursales de la peticionaria, resolvió que para determinar el costo de éstas, debía utilizarse el coeficiente 30/150 de $100,756.33, en vez del coeficiente 30/130 sobre la misma cantidad utilizado por el Teso-

rero de Puerto Rico o del de 50/150 reclamado por la peticionaria.

No conforme con la resolución dictada, la peticionaria radicó el presente recurso para su revisión alegando que el Tribunal de Contribuciones erró:

1. Al denegar $3,800 de la partida de $4,800 que la peticionaria reclamó en su planilla por haberlos pagado a su socio don Manuel Alonso Sobrino, en concepto de sueldo para el año 1936, por servicios realmente prestados.

2. Al reajustar el costo de las existencias en las sucursales de la peticionaria, según inventario al 31 de diciembre de 1936, utilizando para determinar el mismo el coeficiente 30/150 de $100,756.33 en vez del coeficiente 50/150 de la misma cantidad que es el que determina el verdadero costo de dichas existencias.

Discutiremos los errores señalados en el mismo orden que se dejan anteriormente expresados.

■ Alega la peticionaria que el Tribunal de Contribuciones erró al denegarle la suma de $3,800 de la partida de $4,800 que reclamara como una deducción en su planilla y que pagara a su socio Manuel Alonso Sobrino en concepto de sueldo para el año 1936 por servicios realmente prestados. Descansa su contención la peticionaria en la sección 32 de la Ley de Contribuciones sobre Ingresos de 1924, Leyes de 1925, pág. 401, según fué enmendada por la Ley núm. 30 de 1932, y en el caso de *F. Bacó Soria y Hno.* v. *Tribunal de Contribuciones,* 64 D.P.R. 87, en el que resolvimos que una sociedad tiene derecho a deducir de su ingreso bruto las cantidades razonables pagadas a sus socios por servicios personales realmente prestados a la sociedad. De acuerdo con la ley y la jurisprudencia sentada son requisitos *sine qua non* para justificar y tener derecho a la deducción en contienda (1) que la cantidad pagada al socio por sus servicios personales sea razonable y (2) que tales servicios personales hayan sido realmente prestados a la sociedad. La

parte que solicita esta prerrogativa que le concede la ley debe probar convincentemente los requisitos enunciados. ¿Los probó la peticionaria? No hay discusión en cuanto al primero de los requisitos antes indicados; ésta surge en cuanto a si los servicios fueron o no realmente prestados a la sociedad. Hemos tenido a la vista la declaración del testigo Manuel Alonso Sobrino y le hemos dado debida consideración y a nuestro entender no aparece de ésta ni, de ninguna otra declaración satisfactoriamente probado que la suma de $3,800 pagada por la peticionaria a su socio Manuel Alonso Sobrino lo fuera por servicios realmente prestados. Por lo tanto, no había derecho a la deducción de esta suma en la planilla de la peticionaria a los fines de determinar el pago de contribuciones sobre ingresos correspondiente al año 1936.

■■■ Alega la peticionaria en apoyo del segundo señalamiento que el Tribunal de Contribuciones erró al reajustar los inventarios de las sucursales, al determinar el costo de las existencias de éstas a fines de 1936 usando el coeficiente 30/150 sobre $100,756.33 en lugar del coeficiente 50/150 de la misma cantidad reclamado por la peticionaria. La controversia entre las partes litigantes sobre este particular surge con motivo del procedimiento o sistema de contabilidad utilizado por la peticionaria en relación con sus sucursales. Ya antes explicamos el funcionamiento de la contabilidad de las sucursales en relación con la casa principal. Ésta le abría en sus libros a aquéllas una cuenta corriente donde les cargaba toda la mercancía que tomaban y que se les facturaba a base de 150 por ciento de su costo original. Luego, según las sucursales iban vendiendo las mercancías, remitían a la oficina central o principal el producto de las ventas realizadas, el que era abonado a sus respectivas cuentas. A final de año, la diferencia entre el importe cargado por las mercancías tomadas y el importe de lo abonado a éstas en la oficina principal resultaba ser la mercancía en

existencia en dichas sucursales, incluyendo el recargo de un 50 por ciento de sobreprecio del costo original de dicha mercancía. Siendo ésta la situación, necesario era proceder a hacer un reajuste para determinar el verdadero valor o costo de la mercancía en existencia en las sucursales. No existe controversia, por haber sido aceptado expresamente por ambas partes, que $100,756.33 era el costo o valor sobrecargado de las mercancías en existencia en las sucursales el día 31 de diciembre de 1936. La controversia surge únicamente en cuanto al método a seguir para reajustar ese inventario de $100,756.33, a los fines de determinar el verdadero costo de las mercancías en existencia en las sucursales a fines del año contributivo de 1936.

Como hemos dicho anteriormente y según aparece de las alegaciones y la prueba que tuvo ante sí el Tribunal de Contribuciones, la peticionaria agregaba y cargaba a las sucursales en sus libros un 50 por ciento al costo original de la mercancía y, por lo tanto, el valor de la mercancía en los almacenes de las sucursales representaba 150 por ciento del costo de las mismas. También aparece que del sobrecargo de 50 por ciento impuesto a las mercancías, el 20 por ciento era para cubrir toda clase de gastos de las sucursales, inclusive sueldos, rentas, transportación, cuido, manipulación, etc., siendo todos estos gastos pagados por la casa principal, y que los restantes 30 por ciento representaban los beneficios que debía obtener la firma.

El Tribunal de Contribuciones resolvió que el costo de la mercancía en poder de las sucursales era el 100 por ciento, precio de factura de la mercancía en manos de la oficina principal, más el 20 por ciento cargado a dichas sucursales, que cubrían, según la prueba, toda clase de gastos de las sucursales, inclusive sueldos, rentas, transportación, cuido, manipulación, etc. No estamos conformes con la conclusión a que llegó el Tribunal de Contribuciones. Si bien el sistema de contabilidad de la peticionaria no es un modelo de perfec-

·ción, no podemos aceptar que los gastos incurridos por las sucursales en pago de sueldos, rentas, cuido, manipulación, ·etc., puedan sumársele al costo de factura de la mercancía con el fin de determinar su costo actual. Estos son gastos ordinarios del negocio que no tienen relación alguna con el costo actual de la mercancía. Como dice Mertens en su obra _The Law of Federal Income Taxation, vol. II, sección 16.17:

"'*Manejo de gastos de transportación y otros gastos.*—Los gastos de transportación y otros gastos necesarios incurridos para adquirir la posesión de la mercancía, son un factor del costo y pueden ser sumados al mismo, pero aquellos gastos incurridos para fines ajenos a adquirir posesión de la mercancía son gastos corrientes y necesarios del contribuyente y como tales son deducibles. . .''

Para averiguar el verdadero costo de la mercancía en poder de las sucursales, basta sólo una simple operación aritmética. Determínense los gastos de transportación de la mercancía desde San Juan a la sucursal y súmesele al resultado el costo de la mercancía, depositada ésta en San Juan.

*Debe modificarse la resolución recurrida en cuanto a este último extremo, y devolverse el caso para que el Tribunal de Contribuciones, mediante prueba al efecto, pueda determinar el verdadero costo de la mercancía en manos de las sucursales, de conformidad con los términos de esta opinión.*